**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**MARTINSBURG**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　　　　　　**Criminal Action No. 3:08-CR-19**
　　　　　　　　　　　　　　　　　　　　　　　　　　**JUDGE BAILEY**
**ROBERT NICHOLAS ROSS,**

      **Defendant.**

**REPORT AND RECOMMENDATION TO DISTRICT JUDGE RECOMMENDING THAT THE DISTRICT COURT DENY DEFENDANT'S MOTION TO SUPPRESS STATEMENTS [27] AND MOTION TO SUPPRESS EVIDENCE [28]**

## I.　　INTRODUCTION

On January 15, 2009, this matter came before this Court for an evidentiary hearing pursuant to Defendant's Motion to Suppress Statements [27] and Motion to Suppress Evidence [28]. Robert Nicholas Ross ("Defendant"), appeared at the hearing in person and by counsel, Barry P. Beck, Esq. The United States of America ("Government"), appeared by Paul T. Camilletti and Erin K. Reisenweber, Assistant United States Attorneys. The undersigned Magistrate Judge issues this Report and Recommendation on Defendant's Motions to Suppress [27] [28], following holding the evidentiary hearing.

REPORT AND RECOMMENDATION TO DISTRICT JUDGE RECOMMENDING THAT THE DISTRICT COURT DENY DEFENDANT'S MOTION TO SUPPRESS STATEMENTS [27] AND MOTION TO SUPPRESS EVIDENCE [28]

Page 1 of 14

## II. PROPOSED BACKGROUND AND FINDINGS OF FACT TO THE DISTRICT COURT

### A. Procedural Background and Findings of Fact from the January 15, 2009 Motions Hearing

**1.** On March 18, 2008, the Federal Grand Jury for the Northern District of West Virginia, Martinsburg Division, indicted the Defendant with one (1) count of felon in possession.

**2.** On December 5, 2008, the Defendant filed a Motion to Suppress Statements [27] and Motion to Suppress Evidence [28].

**3.** On January 15, 2009, the Court held an evidentiary hearing on Defendant's motions. Since the Defendant raised the issue of an alleged false statement in the search warrant affidavit, the motions hearing also served as a *Franks* hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674 (1978). The Defendant called witnesses and presented evidence in support of his *Franks* motion.

**4.** Defendant called Deborah Breeden to testify. Ms. Breeden testified that she lived at 100 Whispering Echos Drive, and that on June 12, 2007, her doorbell rang and a young man with no shirt and blood everywhere was at her front door. The injured man asked if she could drive him to his brother's house. She declined but instead called 911 and her sister in law, Candy Shirley, who lived nearby and was a medical examiner. Ms. Shirley came quickly with her medical bag and began treating the injured man. He told Ms. Breeden and Ms. Shirley that he injured himself by falling in the woods. The women told the injured man that these injuries could not have been the result of a fall, but the injured man did not waiver from his story. Ms. Shirley continued to treat him until emergency personnel arrived.

REPORT AND RECOMMENDATION TO DISTRICT JUDGE RECOMMENDING THAT THE DISTRICT COURT DENY DEFENDANT'S MOTION TO SUPPRESS STATEMENTS [27] AND MOTION TO SUPPRESS EVIDENCE [28]

Page 2 of 14

5. The Defendant called Emergency Medical Technician ("EMT") Robert Shackelford to testify. He testified that on June 12, 2007, he responded to a 911 emergency call from 100 Whispering Echos Drive.[1] Mr. Shackelford referred to his EMT run sheet[2] and testified that upon arriving at 1901 hours, the patient was in critical condition with a severe laceration to his arm. The patient told Mr. Shackelford that his name was Jonathon Ross,[3] and that he injured himself by walking on a road and falling into a mirror. Mr. Shackelford testified that the patient's story was not very believable, but the patient did not provide any other explanation for his injuries.

6. Defendant then called EMT Scott Biller to testify. He stated that he did not speak to the patient, and Mr. Shackelford was the primary patient provider.

7. The Defendant called Trooper Keith Martin[4] to testify. Trooper Martin has been an officer for 10 years, and Trooper Underwood was an officer in training at the time of the incident. Troopers Martin and Underwood responded to 100 Whispering Echos Drive and found the injured man intoxicated and being treated by the EMTs. Initially, the injured man told them that he was walking on a road and fell into a mirror. Ms. Shirley said that as a medical examiner, her medical opinion was that the injuries looked like defensive wounds from a

---

[1] Mr. Shackelford actually testified that the address was 100 Whispering Knolls Road, but Ms. Breeden testified that the correct address for her residence is 100 Whispering Echos Drive.

[2] Defendant's Exhibit No. 1, attached to Defendant's Motion to Suppress Evidence [28].

[3] Trooper Martin testified later in the motions hearing that the injured man's actual name was George Holmes.

[4] Subsequent to the date of this incident on June 12, 2007, Trooper First Class Martin was promoted to Sergeant. For ease of reference, this report and recommendation will refer to him as Trooper Martin.

REPORT AND RECOMMENDATION TO DISTRICT JUDGE RECOMMENDING THAT THE DISTRICT COURT DENY DEFENDANT'S MOTION TO SUPPRESS STATEMENTS [27] AND MOTION TO SUPPRESS EVIDENCE [28]

Page 3 of 14

blade. After hearing her opinion, Troopers Martin and Underwood continued questioning the injured man. Trooper Martin figured the injury was due to a malicious wounding or a serious domestic battery. The injured man attempted to adhere to his story but did not disagree with Trooper Martin's assessment that the story was not believable. Trooper Martin testified that the injured man gave them probably three false names, including the name Jonathon Ross. After the EMTs loaded the injured man into the ambulance, Ms. Shirley told the Troopers that she thought that the injured man had a brother named Robert Ross who lived 100 yards away on Black Walnut Drive. The Troopers traveled to that location to investigate.

8. When the Troopers arrived at this location, they confronted the Defendant and 6-8 other occupants of the Defendant's residence. Trooper Martin testified that all the occupants, including the Defendant, were intoxicated, uncooperative, and acting belligerent. When Trooper Martin advised the Defendant and the other house occupants that the Defendant's brother was injured and on his way to the hospital, the occupants started talking back and forth with each other, accusing each other of being involved and saying that the people involved needed to leave the house. At that point, Trooper Martin concluded that a serious crime must have been committed against the Defendant's brother. Trooper Martin decided to request police backup because there were 6-8 occupants at the Defendant's house who were swearing, intoxicated and being uncooperative and acting belligerent. Troopers Heil and Chandler responded to Trooper Martin's request for backup. At the Defendant's residence, Trooper Martin briefed Trooper Heil quickly while he was dealing with the

REPORT AND RECOMMENDATION TO DISTRICT JUDGE RECOMMENDING THAT THE DISTRICT COURT DENY DEFENDANT'S MOTION TO SUPPRESS STATEMENTS [27] AND MOTION TO SUPPRESS EVIDENCE [28]

Page 4 of 14

uncooperative occupants.

9. The Defendant called Trooper H.D. Heil to testify. Trooper Heil testified that his role in the investigation was to obtain the search warrant and conduct the search of the Defendant's residence. He was not one of the original responding officers, so in order to obtain the search warrant, he relied on the information provided to him by Troopers Martin and Underwood. Trooper Heil was at the Defendant's residence for about 20 minutes before leaving to obtain the search warrant. Trooper Heil knew the physical location of the Defendant's residence, but he was uncertain of the mailing address. Headquarters provided the incorrect address to Trooper Heil, which is why the search warrant reflects the wrong mailing address. Trooper Heil testified that the search warrant alleged a malicious wounding, so in his search he was looking for blood spatter, a weapon used for cutting, or an instrument that could be used for malicious wounding. During the search, Trooper Martin called Trooper Heil and advised that he had prior dealings with the Defendant and knew the Defendant was a convicted felon. After receiving this information, Trooper Heil seized the firearms found in the residence and a photograph of the Defendant holding one of the firearms. Trooper Heil seized one firearm from under the Defendant's mattress and two other firearms in a closet accessible to all household residents. Trooper Heil does not remember if he was told that the injured man was drunk, and he does not know whether or not he would have put that in the search warrant affidavit.

10. During Trooper Martin's testimony, he acknowledged the discrepancies between his testimony at the hearing, the search warrant affidavit drafted by Trooper Heil, and the police

REPORT AND RECOMMENDATION TO DISTRICT JUDGE RECOMMENDING THAT THE DISTRICT COURT DENY DEFENDANT'S MOTION TO SUPPRESS STATEMENTS [27] AND MOTION TO SUPPRESS EVIDENCE [28]

Page 5 of 14

report written by Trooper Underwood. Trooper Martin testified that the affidavit for the search warrant, written by Trooper Heil, contained inaccurate information. First, the injured man never told the Troopers that he had been attacked. In addition, Trooper Martin admitted that both the police report and the affidavit for the search warrant do not contain the statements the injured man made to the Troopers before he was loaded into the ambulance. Therefore, the statement in the search warrant affidavit that the injured man had told them he had been attacked was false. In addition, the statement in the search warrant affidavit that the injured man provided no other information to the officers before being loaded into the ambulance was also inaccurate because he was interviewed by the Troopers.

**B.     Further Background and Findings of Fact from the Motions by the Defendant and the Responses by the Government**

**1.**    The Defendant and the Government raised other facts and issues in the motions and responses, which were not raised at the January 15, 2009 motions hearing. The facts surrounding these other issues do not appear to be in dispute, therefore, the Court will rely on the facts outlined by the parties.

**2.**    Subsequent to processing the Defendant, the Troopers discovered that the injured man, George Holmes, did not receive his injuries from an alleged malicious wounding but instead injured himself while attempting to steal an ATV. At the time of the police report, Mr. Holmes was being prosecuted for those charges in Jefferson County, West Virginia.

**3.**    After arresting the Defendant, Trooper Martin placed a post-it note in the Defendant's file stating, "I would ask for a higher bond, this subject is a flight risk. He mentioned leaving

REPORT AND RECOMMENDATION TO DISTRICT JUDGE RECOMMENDING THAT THE DISTRICT COURT DENY DEFENDANT'S MOTION TO SUPPRESS STATEMENTS [27] AND MOTION TO SUPPRESS EVIDENCE [28]

Page 6 of 14

after bonding out. Gave us a very bad time. I'm going to contact ATF for possible Fed charges."

**4.**    On June 18, 2007, West Virginia state circuit court appointed counsel for the Defendant.

**5.**    On July 30, 2007 and January 31, 2008, while the state court case was pending, ATF agents contacted the Defendant and interviewed him, without his state appointed counsel, regarding his arrest and alleged possession of firearms.

### III.    ANALYSIS FOR REPORT AND RECOMMENDATION THAT THE DISTRICT COURT DENY DEFENDANT'S MOTION TO SUPPRESS STATEMENTS [27] AND MOTION TO SUPPRESS EVIDENCE [28]

#### A.    Report and Recommendation that the District Court Deny Defendant's Motion to Suppress Statements [27]

The Sixth Amendment right to counsel encompasses *uncharged* offenses that would be considered the same as the *charged* offenses. *See Texas v. Cobb*, 532 U.S. 162 (2001) (italics added). The Defendant moves to suppress the statements he provided to the ATF agents while his state court case was pending. In Defendant's motion, he acknowledges that the Fourth Circuit has held that federal and state offenses are not the same for purposes of the Sixth Amendment right to counsel because of the "dual sovereignty doctrine." *See United States v. Alvarado*, 440 F.3d 191 (4th Cir. 2006). However, the Defendant noted that the circuits are split on the issue. *See United States v. Mills*, 412 F.3d 325 (2d Cir. 2005); *see also United States v. Krueger*, 415 F.3d 766 (7th Cir. 2005). The Court is obligated to follow the holding of the Fourth Circuit and find that the Defendant's Sixth Amendment right to counsel on his state charges did not extend to an uncharged federal offense.

REPORT AND RECOMMENDATION TO DISTRICT JUDGE RECOMMENDING THAT THE DISTRICT COURT DENY DEFENDANT'S MOTION TO SUPPRESS STATEMENTS [27] AND MOTION TO SUPPRESS EVIDENCE [28]

Page 7 of 14

The Defendant further argues that he is entitled to the *Bartkus*[5] exception alluded to in *Alvarado* because the state authorities were acting as a tool for the Government. The Defendant offers Trooper Martin's post-it note as evidence in order to qualify for a *Bartkus* exception. However, Trooper Martin's post-it note only demonstrates "collaborative efforts" and a "joint investigation," and "does not sustain a conclusion that the state prosecution was a sham and a cover for a federal prosecution..." *See Alvarado*, 440 F.3d at 198; *see also Bartkus*, 359 U.S. at 123. Therefore, the undersigned Magistrate Judge recommends that the District Court DENY Defendant's Motion to Suppress Statements [27].

**B.     Report and Recommendation that the District Court Deny Defendant's Motion to Suppress Evidence [28]**

**1.     Pursuant to *Franks* and *Wilkes*, the Court Finds that the Search Warrant Contained Sufficient Probable Cause, even when Disregarding the False Statements in the Affidavit**

The Defendant moves to suppress the evidence seized at his residence because the affidavit in support of the search warrant contained false statements.

> It is well-established that a false or misleading statement in a warrant affidavit does not constitute a Fourth Amendment violation unless the statement is "necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674 (1978); *see United States v. George*, 971 F.2d 1113 (4th Cir.1992). Here, probable cause for [the defendant's] arrest plainly existed even in the absence of [the] purported misrepresentation; thus, even accepting [the] statement as a lie, it could not possibly have constituted a Fourth Amendment violation because the material falsely represented was altogether unnecessary to the magistrate's finding of probable cause.

*See Wilkes v. Young*, 28 F.3d 1362 (4th Cir. 1994). Prior to the January 15, 2009 motions hearing,

---

[5] *Bartkus v. Illinois*, 359 U.S. 121 (1959).

REPORT AND RECOMMENDATION TO DISTRICT JUDGE RECOMMENDING THAT THE DISTRICT COURT DENY DEFENDANT'S MOTION TO SUPPRESS STATEMENTS [27] AND MOTION TO SUPPRESS EVIDENCE [28]

Page 8 of 14

it remained unclear what information the Troopers had relied upon in order to request a search warrant. The police report varied from the search warrant affidavit in whether or not the injured man told the Troopers that he was attacked; therefore, holding a *Franks* hearing was necessary for the Court to make a proper decision on the Defendant's motion. From the testimony and evidence presented at the hearing, the Court finds that the injured man did not tell the Troopers he was attacked, and Trooper Heil simply erred in drafting the search warrant. Trooper Heil had hurriedly obtained the information second hand from Troopers Martin and Underwood, which explains the inaccurate statements. "Affidavits are normally drafted by non-lawyers in the midst and haste of a criminal investigation." *See U.S. v. Colkley*, 899 F.2d 297 (4th Cir. 1990), *citing United States v. Ventresca*, 380 U.S. 102, 85 S. Ct. 741 (1965). However, even after excising the false statements from the affidavit, the Court finds that probable cause still exists in the search warrant.

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. *See Jones v. United States*, 362 U.S. 257, 80 S. Ct. 725 (1960).

*Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317 (1983). In disregarding the inaccurate statements, the search warrant affidavit in the instant case still meets the probable cause requirement. The search warrant affidavit correctly stated that the Troopers encountered a seriously injured man, and upon arriving at the Defendant's residence, the occupants in his house were intoxicated and

REPORT AND RECOMMENDATION TO DISTRICT JUDGE RECOMMENDING THAT THE DISTRICT COURT DENY DEFENDANT'S MOTION TO SUPPRESS STATEMENTS [27] AND MOTION TO SUPPRESS EVIDENCE [28]

Page 9 of 14

belligerent and refused to provide any information to the Troopers. The affidavit further stated that one of the occupants of the residence uttered that two other occupants needed to leave because they were involved.

> We...decline to invalidate the warrant that authorized the search of [the defendant's] residence. [The defendant] claims that the fruits of the search should have been suppressed because of alleged misstatements in the warrant's supporting affidavit. *See generally Franks*, 438 U.S. 154. Contrary to [the defendant's] contention, however, the supporting affidavit was accurate in all material respects. There also was no showing that the affidavit would have been insufficient to support the search warrant had the disputed information been disregarded.

*See U.S. v. Taylor*, 857 F.2d 210 (4th Cir. 1988). Similarly, this Court finds that the search warrant affidavit contains sufficient probable cause even after excluding the false statements.

> Because of the Fourth Amendment's strong preference for searches conducted pursuant to warrants, reviewing courts must resist the temptation to "invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner." *See Gates*, 462 U.S. at 236, 103 S. Ct. at 2331 (*quoting Ventresca*, 380 U.S. at 109, 85 S. Ct. at 746).

*U.S. v. Blackwood*, 913 F.2d 139 (4th Cir. 1990). In accordance with *Gates* and *Blackwood*, this Court will not invalidate a warrant containing probable cause, notwithstanding the Trooper's errors in drafting.

### 2. The Court Finds that the Seizure of the Firearms and the Photograph of the Defendant Holding one of the Firearms did Not Exceed the Scope of the Search Warrant

Defendant also argues that the search exceeded the scope of the warrant. Although the search warrant authorized the Troopers to seize evidence of a malicious wounding, the search

REPORT AND RECOMMENDATION TO DISTRICT JUDGE RECOMMENDING THAT THE DISTRICT COURT DENY DEFENDANT'S MOTION TO SUPPRESS STATEMENTS [27] AND MOTION TO SUPPRESS EVIDENCE [28]

Page 10 of 14

resulted in the seizure of three firearms and a photograph of the Defendant holding one of the firearms.

> Under [the plain view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. *See Horton v. California*, 496 U.S. 128, 110 S. Ct. 2301 (1990); *Texas v. Brown*, 460 U.S. 730, 103 S. Ct. 1535 (1983) (plurality opinion).

*See Minnesota v. Dickerson*, 508 U.S. 366, 113 S. Ct. 2130 (1993). In the case, *sub judice*, the Troopers were lawfully present in the Defendant's house pursuant to the search warrant, and they were executing a search for evidence of a malicious wounding. Consequently, it does not exceed the scope of the search for the Troopers to come across three firearms and a photograph of the Defendant holding one of the firearms. "Thus, when an officer's presence in a residence is justified by a warrant or by any recognized exception to the warrant requirement, including consent, he may seize incriminating evidence that is in his plain view." *U.S. v. Jackson*, 131 F.3d 1105 (4th Cir. 1997). After Trooper Martin notified Trooper Heil that the Defendant was a convicted felon, the plain view doctrine permitted Trooper Heil to seize the firearms and the photograph. Trooper Heil seized the incriminating items within the scope of a lawful search.

REPORT AND RECOMMENDATION TO DISTRICT JUDGE RECOMMENDING THAT THE DISTRICT COURT DENY DEFENDANT'S MOTION TO SUPPRESS STATEMENTS [27] AND MOTION TO SUPPRESS EVIDENCE [28]

Page 11 of 14

### 3. The Court Finds that the Search Warrant was Not Overbroad and the Concluding Phrase of the Warrant Authorizing the Seizure of "Any Evidence" will Not Serve to Invalidate the Remaining Sufficiently Particular Search Warrant

Finally, the Defendant argues that the wording of the search warrant was overbroad. The warrant authorized the Troopers to seize "[a]ny evidence of the fore mentioned crime [maliciously wounding] including any weapon used and *any other evidence of a crime*." (*See* Attachment to Def's. Mot. Suppress [28])(italics added).

> The warrant in the instant case limited the agents' search to evidence relating to the commission of a particular crime: bank robbery. Bank robbery is a specific illegal activity that, as the Government notes, generates quite distinctive evidence. Though certainly broad in its description, we cannot say that the warrant failed to provide that degree of specificity required by the precedent of this Court.

*United States v. Dickerson*, 166 F.3d 667 (4th Cir. 1999), *rev'd on other grounds*, 530 U.S. 428 (2000). Likewise, the instant search warrant authorized a search for evidence of the particular crime of malicious wounding. Although the warrant might have been a bit more narrowly drafted, it does not fail to provide the degree of specificity required by the Fourth Amendment. The Defendant also contends that the last phrase of the warrant authorizing the Troopers to seize "any other evidence of a crime" was unconstitutionally overbroad.

> The general 'tail' of the search warrant will not be construed so as to defeat the particularity of the warrant...In our opinion it is this particularity which, if present, will not be defeated by ambiguous conclusionary language. While a sufficiently particular qualifying phrase may have the effect of bringing an otherwise "general" warrant within the constitutional standard, a defective qualifying phrase will not defeat a warrant which is otherwise sufficiently specific...We are further of the opinion that the challenged phrase should properly be treated as merely superfluous...accordingly, we

REPORT AND RECOMMENDATION TO DISTRICT JUDGE RECOMMENDING THAT THE DISTRICT COURT DENY DEFENDANT'S MOTION TO SUPPRESS STATEMENTS [27] AND MOTION TO SUPPRESS EVIDENCE [28]

Page 12 of 14

> hold that it was error for the district court to suppress all of the evidence obtained under the warrant.

*See U.S. v. Jacob*, 657 F.2d 49 (4th Cir. 1981). In accordance with *Jacob*, the Court finds that the broad concluding phrase will not serve to invalidate the remaining sufficiently specific warrant.

Therefore, the undersigned Magistrate Judge recommends that the District Court DENY Defendant's Motion to Suppress Evidence [28].

## IV. RECOMMENDATION AND CONCLUSION

The undersigned Magistrate Judge hereby **RECOMMENDS** that the District Court **DENY** Defendant's Motion to Suppress Statements [27] and Motion to Suppress Evidence [28]. The Court notes the Defendant's objection to the ruling.

Within ten (10) days of receipt of service of this Report and Recommendation, any counsel of record may file with the Clerk of the Court any written objections to this Recommendation. The party should clearly identify the portions of the Recommendation to which the party is filing an objection and the basis for such objection. The party shall also submit a copy of any objections to the Honorable John P. Bailey. Failure to timely file objections to this Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon this Recommendation. 28 U.S.C. § 636(b)(1).

REPORT AND RECOMMENDATION TO DISTRICT JUDGE RECOMMENDING THAT THE DISTRICT COURT DENY DEFENDANT'S MOTION TO SUPPRESS STATEMENTS [27] AND MOTION TO SUPPRESS EVIDENCE [28]

Page 13 of 14

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED: January 22, 2009**

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE

REPORT AND RECOMMENDATION TO DISTRICT JUDGE RECOMMENDING THAT THE DISTRICT COURT DENY DEFENDANT'S MOTION TO SUPPRESS STATEMENTS [27] AND MOTION TO SUPPRESS EVIDENCE [28]

Page 14 of 14