# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.                                           **Criminal Action No. 3:08-CR-19**
                                                              **(BAILEY)**

**ROBERT NICHOLAS ROSS,**

    Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION TO DISTRICT JUDGE RECOMMENDING THAT THE DISTRICT COURT DENY DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND MOTION TO SUPPRESS EVIDENCE

On this day, the above-styled matter came before this Court upon consideration of Report and Recommendation of United States Magistrate Judge David J. Joel. By Standing Order, this action was referred to Magistrate Judge Joel for submission of a proposed report and a recommendation ("R & R"). Magistrate Judge Joel filed his R & R on January 22, 2009. [Doc. 85]. In that filing, the magistrate judge recommended that this Court deny the on Defendant's Motions to Suppress [Docs. 27 & 28].

Pursuant to 28 U.S.C. § 636 (b) (1) (c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. ***Thomas v. Arn***, 474 U.S. 140, 150 (1985). In addition, failure to file timely objections constitutes a waiver of *de novo* review and the right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); ***Snyder v. Ridenour***, 889 F.2d 1363, 1366 (4th Cir. 1989); ***United States v. Schronce***, 727 F.2d 91,

94 (4th Cir. 1984). Here, objections to Magistrate Judge Joel's R & R were due within ten (10) days of filing of this same, pursuant to 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b). Here, objections to the R&R were timely filed on February 9, 2009. Accordingly, this Court will review the portions to which objection was made *de novo*. The remaining portions will be reviewed for clear error.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. Procedural Background and Findings of Fact from the January 15, 2009 Motions Hearing

On January 15, 2009, Magistrate Judge Joel held an evidentiary hearing on the above motions. The evidence presented at the hearing was as follows.

**1.** On March 18, 2008, the Federal Grand Jury for the Northern District of West Virginia, Martinsburg Division, indicted the defendant with one (1) count of felon in possession.

**2.** On December 5, 2008, the Defendant filed a Motion to Suppress Statements [Doc. 27] and Motion to Suppress Evidence [Doc. 28].

**3.** On January 15, 2009, the Court held an evidentiary hearing on Defendant's motions. Since the Defendant raised the issue of an alleged false statement in the search warrant affidavit, the motions hearing also served as a ***Franks*** hearing pursuant to ***Franks v. Delaware***, 438 U.S. 154, 98 S. Ct. 2674 (1978). The Defendant called witnesses and presented evidence in support of his ***Franks*** motion.

**4.** Defendant called Deborah Breeden to testify. Ms. Breeden testified that she lived at 100 Whispering Echos Drive, and that on June 12, 2007, her doorbell rang and

a young man with no shirt and blood everywhere was at her front door. The injured man asked if she could drive him to his brother's house. She declined but instead called 911 and her sister-in-law, Candy Shirley, who lived nearby and was a medical examiner. Ms. Shirley came quickly with her medical bag and began treating the injured man. He told Ms. Breeden and Ms. Shirley that he injured himself by falling in the woods. The women told the injured man that these injuries could not have been the result of a fall, but the injured man did not waiver from his story. Ms. Shirley continued to treat him until emergency personnel arrived.

5. The Defendant called Emergency Medical Technician ("EMT") Robert Shackelford to testify. He testified that on June 12, 2007, he responded to a 911 emergency call from 100 Whispering Echos Drive.[1] Mr. Shackelford referred to his EMT run sheet[2] and testified that upon arriving at 1901 hours, the patient was in critical condition with a severe laceration to his arm. The patient told Mr. Shackelford that his name was Jonathon Ross,[3] and that he injured himself by walking on a road and falling into a mirror. Mr. Shackelford testified that the patient's story was not very believable, but the patient did not provide any other explanation for his injuries.

6. Defendant then called EMT Scott Biller to testify. He stated that he did not speak to the patient, and Mr. Shackelford was the primary patient provider.

---

[1] Mr. Shackelford actually testified that the address was 100 Whispering Knolls Road, but Ms. Breeden testified that the correct address for her residence is 100 Whispering Echos Drive.

[2] Defendant's Exhibit No. 1, attached to Defendant's Motion to Suppress Evidence [Doc. 28].

[3] Trooper Martin testified later in the motions hearing that the injured man's actual name was George Holmes.

**7.** The Defendant called Trooper Keith Martin[4] to testify. Trooper Martin has been an officer for 10 years, and Trooper Underwood was an officer in training at the time of the incident. Troopers Martin and Underwood responded to 100 Whispering Echos Drive and found the injured man intoxicated and being treated by the EMT's. Initially, the injured man told them that he was walking on a road and fell into a mirror. Ms. Shirley said that as a medical examiner, her medical opinion was that the injuries looked like defensive wounds from a blade. After hearing her opinion, Troopers Martin and Underwood continued questioning the injured man. Trooper Martin figured the injury was due to a malicious wounding or a serious domestic battery. The injured man attempted to adhere to his story but did not disagree with Trooper Martin's assessment that the story was not believable. Trooper Martin testified that the injured man gave them probably three false names, including the name Jonathon Ross. After the EMT's loaded the injured man into the ambulance, Ms. Shirley told the Troopers that she thought that the injured man had a brother named Robert Ross who lived 100 yards away on Black Walnut Drive. The Troopers traveled to that location to investigate.

**8.** When the Troopers arrived at this location, they confronted the Defendant and 6-8 other occupants of the Defendant's residence. Trooper Martin testified that all the occupants, including the Defendant, were intoxicated, uncooperative, and acting belligerent. When Trooper Martin advised the Defendant and the other house occupants that the Defendant's brother was injured and on his way to the hospital,

---

[4] Subsequent to the date of this incident on June 12, 2007, Trooper First Class Martin was promoted to Sergeant. For ease of reference, this report and recommendation will refer to him as Trooper Martin.

the occupants started talking back and forth with each other, accusing each other of being involved and saying that the people involved needed to leave the house. At that point, Trooper Martin concluded that a serious crime must have been committed against the Defendant's brother. Trooper Martin decided to request police backup because there were 6-8 occupants at the Defendant's house who were swearing, intoxicated and being uncooperative and acting belligerent. Troopers Heil and Chandler responded to Trooper Martin's request for backup. At the Defendant's residence, Trooper Martin briefed Trooper Heil quickly while he was dealing with the uncooperative occupants.

9. The Defendant called Trooper H.D. Heil to testify. Trooper Heil testified that his role in the investigation was to obtain the search warrant and conduct the search of the Defendant's residence. He was not one of the original responding officers, so in order to obtain the search warrant, he relied on the information provided to him by Troopers Martin and Underwood. Trooper Heil was at the Defendant's residence for about 20 minutes before leaving to obtain the search warrant. Trooper Heil knew the physical location of the Defendant's residence, but he was uncertain of the mailing address. Headquarters provided the incorrect address to Trooper Heil, which is why the search warrant reflects the wrong mailing address. Trooper Heil testified that the search warrant alleged a malicious wounding, so in his search he was looking for blood spatter, a weapon used for cutting, or an instrument that could be used for malicious wounding. During the search, Trooper Martin called Trooper Heil and advised that he had prior dealings with the Defendant and knew the Defendant was a convicted felon. After receiving this information, Trooper Heil

seized the firearms found in the residence and a photograph of the Defendant holding one of the firearms. Trooper Heil seized one firearm from under the Defendant's mattress and two other firearms in a closet accessible to all household residents. Trooper Heil does not remember if he was told that the injured man was drunk, and he does not know whether or not he would have put that in the search warrant affidavit.

10. During Trooper Martin's testimony, he acknowledged the discrepancies between his testimony at the hearing, the search warrant affidavit drafted by Trooper Heil, and the police report written by Trooper Underwood. Trooper Martin testified that the affidavit for the search warrant, written by Trooper Heil, contained inaccurate information. First, the injured man never told the Troopers that he had been attacked. In addition, Trooper Martin admitted that both the police report and the affidavit for the search warrant do not contain the statements the injured man made to the Troopers before he was loaded into the ambulance. Therefore, the statement in the search warrant affidavit that the injured man had told them he had been attacked was false. In addition, the statement in the search warrant affidavit that the injured man provided no other information to the officers before being loaded into the ambulance was also inaccurate because he was interviewed by the Troopers.

### B. Further Background and Findings of Fact from the Motions by the Defendant and the Responses by the Government

1. The Defendant and the Government raised other facts and issues in the motions and responses, which were not raised at the January 15, 2009, motions hearing. The facts surrounding these other issues do not appear to be in dispute, therefore,

the Court will rely on the facts outlined by the parties.

2. Subsequent to processing the Defendant, the Troopers discovered that the injured man, George Holmes, did not receive his injuries from an alleged malicious wounding but instead injured himself while attempting to steal an ATV. At the time of the police report, Mr. Holmes was being prosecuted for those charges in Jefferson County, West Virginia.

3. After arresting the Defendant, Trooper Martin placed a post-it note in the Defendant's file stating, "I would ask for a higher bond, this subject is a flight risk. He mentioned leaving after bonding out. Gave us a very bad time. I'm going to contact ATF for possible Fed charges."

4. On June 18, 2007, West Virginia state circuit court appointed counsel for the Defendant.

5. On July 30, 2007, and January 31, 2008, while the state court case was pending, ATF agents contacted the Defendant and interviewed him, without his state appointed counsel, regarding his arrest and alleged possession of firearms.

## II. ANALYSIS

### A. Defendant's Motion to Suppress Statements is Denied

The Sixth Amendment right to counsel encompasses *uncharged* offenses that would be considered the same as the *charged* offenses. See **Texas v. Cobb**, 532 U.S. 162 (2001) (emphasis added). The Defendant moves to suppress the statements he provided to the ATF agents while his state court case was pending. In Defendant's motion, he acknowledges that the Fourth Circuit has held that federal and state offenses are not the

same for purposes of the Sixth Amendment right to counsel because of the "dual sovereignty doctrine." See ***United States v. Alvarado***, 440 F.3d 191 (4th Cir. 2006). However, the Defendant noted that the circuits are split on the issue. See ***United States v. Mills***, 412 F.3d 325 (2d Cir. 2005); see also ***United States v. Krueger***, 415 F.3d 766 (7th Cir. 2005). The Court is obligated to follow the holding of the Fourth Circuit and find that the Defendant's Sixth Amendment right to counsel on his state charges did not extend to an uncharged federal offense.

The Defendant further argues that he is entitled to the ***Bartkus***[5] exception alluded to in ***Alvarado*** because the state authorities were acting as a tool for the Government. The Defendant offers Trooper Martin's post-it note as evidence in order to qualify for a ***Bartkus*** exception. However, Trooper Martin's post-it note only demonstrates "collaborative efforts" and a "joint investigation," and "does not sustain a conclusion that the state prosecution was a sham and a cover for a federal prosecution..." See ***Alvarado***, 440 F.3d at 198; see also ***Bartkus***, 359 U.S. at 123.

### B. Defendant's Motion to Suppress Evidence is Denied

**1. Pursuant to *Franks* and *Wilkes*, the Court Finds that the Search Warrant Contained Sufficient Probable Cause, even when Disregarding the False Statements in the Affidavit**

The Defendant moves to suppress the evidence seized at his residence because the affidavit in support of the search warrant contained false statements.

> It is well-established that a false or misleading statement in a warrant affidavit does not constitute a Fourth Amendment violation unless the statement is "necessary to the finding of

---

[5] ***Bartkus v. Illinois***, 359 U.S. 121 (1959).

> probable cause." ***Franks v. Delaware***, 438 U.S. 154, 98 S. Ct. 2674 (1978); see ***United States v. George***, 971 F.2d 1113 (4th Cir.1992). Here, probable cause for [the defendant's] arrest plainly existed even in the absence of [the] purported misrepresentation; thus, even accepting [the] statement as a lie, it could not possibly have constituted a Fourth Amendment violation because the material falsely represented was altogether unnecessary to the magistrate's finding of probable cause.

See ***Wilkes v. Young***, 28 F.3d 1362 (4th Cir. 1994). Prior to the January 15, 2009, motions hearing, it remained unclear what information the Troopers had relied upon in order to request a search warrant. The police report varied from the search warrant affidavit in whether or not the injured man told the Troopers that he was attacked; therefore, holding a ***Franks*** hearing was necessary for the Court to make a proper decision on the Defendant's motion. From the testimony and evidence presented at the hearing, the magistrate judge found that the injured man did not tell the Troopers he was attacked, and Trooper Heil simply erred in drafting the search warrant. Trooper Heil had hurriedly obtained the information second-hand from Troopers Martin and Underwood, which explains the inaccurate statements. "Affidavits are normally drafted by non-lawyers in the midst and haste of a criminal investigation." See ***United States v. Colkley***, 899 F.2d 297 (4th Cir. 1990), citing ***United States v. Ventresca***, 380 U.S. 102, 85 S. Ct. 741 (1965). However, even after excising the false statements from the affidavit, this Court finds that probable cause still exists in the search warrant.

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing

> court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. *See* **Jones v. United States**, 362 U.S. 257, 80 S. Ct. 725 (1960).

***Illinois v. Gates***, 462 U.S. 213, 103 S. Ct. 2317 (1983).  In disregarding the inaccurate statements, the search warrant affidavit in the instant case still meets the probable cause requirement.  The search warrant affidavit correctly stated that the Troopers encountered a seriously injured man, and upon arriving at the Defendant's residence, the occupants in his house were intoxicated and belligerent and refused to provide any information to the Troopers.  The affidavit further stated that one of the occupants of the residence uttered that two other occupants needed to leave because they were involved.

> We...decline to invalidate the warrant that authorized the search of [the defendant's] residence. [The defendant] claims that the fruits of the search should have been suppressed because of alleged misstatements in the warrant's supporting affidavit. *See generally* **Franks**, 438 U.S. 154.  Contrary to [the defendant's] contention, however, the supporting affidavit was accurate in all material respects.  There also was no showing that the affidavit would have been insufficient to support the search warrant had the disputed information been disregarded.

*See* ***United States v. Taylor***, 857 F.2d 210 (4th Cir. 1988).  Similarly, this Court finds that the search warrant affidavit contains sufficient probable cause even after excluding the false statements.

> Because of the Fourth Amendment's strong preference for searches conducted pursuant to warrants, reviewing courts must resist the temptation to "invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner." *See* **Gates**, 462 U.S. at 236, 103 S. Ct. at 2331 (quoting **Ventresca**, 380 U.S. at 109, 85 S. Ct. at 746).

***United States v. Blackwood***, 913 F.2d 139 (4th Cir. 1990).  In accordance with ***Gates*** and

***Blackwood***, this Court will not invalidate a warrant containing probable cause, notwithstanding the Trooper's errors in drafting.

**2. The Court Finds that the Seizure of the Firearms and the Photograph of the Defendant Holding one of the Firearms did Not Exceed the Scope of the Search Warrant**

Defendant also argues that the search exceeded the scope of the warrant. Although the search warrant authorized the Troopers to seize evidence of a malicious wounding, the search resulted in the seizure of three firearms and a photograph of the Defendant holding one of the firearms.

> Under [the plain view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. *See **Horton v. California***, 496 U.S. 128, 110 S. Ct. 2301 (1990); ***Texas v. Brown***, 460 U.S. 730, 103 S. Ct. 1535 (1983) (plurality opinion).

*See **Minnesota v. Dickerson***, 508 U.S. 366, 113 S. Ct. 2130 (1993). In the case, *sub judice*, the Troopers were lawfully present in the Defendant's house pursuant to the search warrant, and they were executing a search for evidence of a malicious wounding. Consequently, it does not exceed the scope of the search for the Troopers to come across three firearms and a photograph of the Defendant holding one of the firearms. "Thus, when an officer's presence in a residence is justified by a warrant or by any recognized exception to the warrant requirement, including consent, he may seize incriminating evidence that is in his plain view." ***United States v. Jackson***, 131 F.3d 1105 (4th Cir. 1997). After Trooper Martin notified Trooper Heil that the Defendant was a convicted felon, the plain view doctrine permitted Trooper Heil to seize the firearms and the photograph. Trooper Heil

seized the incriminating items within the scope of a lawful search.

**3. The Court Finds that the Search Warrant was Not Overbroad and the Concluding Phrase of the Warrant Authorizing the Seizure of "Any Evidence" will Not Serve to Invalidate the Remaining Sufficiently Particular Search Warrant**

Finally, the Defendant argues that the wording of the search warrant was overbroad. The warrant authorized the Troopers to seize "[a]ny evidence of the fore mentioned crime [maliciously wounding] including any weapon used and *any other evidence of a crime.*" (*See* Attachment to Def's. Mot. Suppress [28])(emphasis added).

> The warrant in the instant case limited the agents' search to evidence relating to the commission of a particular crime: bank robbery. Bank robbery is a specific illegal activity that, as the Government notes, generates quite distinctive evidence. Though certainly broad in its description, we cannot say that the warrant failed to provide that degree of specificity required by the precedent of this Court.

**United States v. Dickerson**, 166 F.3d 667 (4th Cir. 1999), *rev'd on other grounds*, 530 U.S. 428 (2000). Likewise, the instant search warrant authorized a search for evidence of the particular crime of malicious wounding. Although the warrant might have been a bit more narrowly drafted, it does not fail to provide the degree of specificity required by the Fourth Amendment. The Defendant also contends that the last phrase of the warrant authorizing the Troopers to seize "any other evidence of a crime" was unconstitutionally overbroad.

> The general 'tail' of the search warrant will not be construed so as to defeat the particularity of the warrant...In our opinion it is this particularity which, if present, will not be defeated by ambiguous conclusionary language. While a sufficiently particular qualifying phrase may have the effect of bringing an otherwise "general" warrant within the constitutional standard, a defective qualifying phrase will not defeat a warrant which is otherwise sufficiently specific...We are further of the opinion

12

> that the challenged phrase should properly be treated as merely superfluous...accordingly, we hold that it was error for the district court to suppress all of the evidence obtained under the warrant.

See **United States v. Jacob**, 657 F.2d 49 (4th Cir. 1981). In accordance with **Jacob**, the Court finds that the broad concluding phrase will not serve to invalidate the remaining sufficiently specific warrant.

### III. DEFENDANT'S OBJECTIONS

In his objections, the defendant takes issue with the affidavit that the state magistrate judge relied upon to issue the search warrant. He states that the affidavit contained a knowing or reckless falsity which was material to the finding of probable cause. The defendant specifically cites Magistrate Joel's finding that the affidavit falsely alleged that the Defendant's brother told Trooper Martin that he had been attacked at his residence. The magistrate judge, however, concluded that Trooper Heil "simply erred" and that "even after excising the false statements," the affidavit would have been sufficient to support a finding of probable cause. The defendant argues these findings are clearly erroneous.

The defendant first cites **Aponte Matos v. Toledo Davila**, 135 F.3d 182, 184 (1st Cir. 1998), which stands for the proposition that "a material fabrication [in a warrant application] violates the Warrant Clause of the Fourth Amendment." Further, the defendant cites the **Franks** case, setting two grounds upon which a search warrant must be voided: "where a court (1) finds that the affiant knowingly or recklessly included false statements in or omitted material information from an affidavit in support of a search warrant and (2) concludes, after excising such false statements and considering such material omissions,

13

that the corrected affidavit does not support a finding of probable cause."

As noted above, the search warrant affidavit correctly stated that the Troopers encountered a seriously injured man, and upon arriving at the Defendant's residence, the occupants in his house were intoxicated and belligerent and refused to provide any information to the Troopers. The affidavit further stated that one of the occupants of the residence uttered that two other occupants needed to leave because they were involved. Under these circumstances, this Court finds a fair probability that evidence of the crime of malicious assault would be found at the residence searched. See ***Illinois v. Gates***, 462 U.S. 213 (1983).

Here, the defendant argues the false information provided by Trooper Martin upon which the warrant was issued was provided to the magistrate by Trooper Heil, who did not know the same to be false. The defendant argues that "[t]he Government cannot insulate one agent's deliberate or reckless misstatement in an affidavit merely by relaying it through another agent personally ignorant of its falsity." ***United States v. Perez***, 247 F.Supp.2d 459, 478 (S.D.N.Y. 2003), citing ***Franks***, 438 U.S. at 164 n.6.

As noted above, Ms. Shirley, a medical examiner at the scene, stated in her medical opinion that the injuries looked like defensive wounds from a blade. After hearing her opinion, Troopers Martin and Underwood continued questioning the injured man. Trooper Martin figured the injury was due to a malicious wounding or a serious domestic battery. The injured man attempted to adhere to his story but did not disagree with Trooper Martin's assessment that the story was not believable. Based upon this information, and in the "midst and haste of a criminal investigation," ***United States v. Colkley***, 899 F.2d 297, the

14

Troopers acted to obtain the warrant.

The defendant next argues that the false allegation was knowingly or recklessly included in the affidavit.  Specifically, the defendant argues that no evidence presented at the ***Franks*** hearing supports Magistrate Judge Joel's finding that Trooper Heil simply made an innocent mistake in drafting his affidavit.  Rather, he argues the evidence showed that either Trooper Martin knowingly provided Trooper Heil false information, or that Trooper Martin and Trooper Heil caused the affidavit to be recklessly submitted without regard to whether it contained accurate and truthful information.  Therefore, the defendant argues that the false allegation was material to the issuance of the search warrant because probable cause would not have existed without it.

Again, this Court finds that probable cause existed based on the totality of the circumstances, which included a seriously injured man inspected by a medical examiner who opined that the injuries looked like defensive wounds from a blade and intoxicated and belligerent occupants at the injured man's brother's home who refused to provide information to the troopers, but who overheard the occupants accusing one another of their involvement.  Based on the above, this Court simply cannot agree that the information provided was done so intentionally or recklessly.  Accordingly, this Court finds that probable cause for the warrant clearly existed.

As a final matter, the defendant requests a hearing before this Court to present oral argument on these issues.  This Court has reviewed all the evidence and finds no need for an additional hearing on this issue.  Accordingly, the request is **DENIED**.

## IV.  CONCLUSION

Accordingly, after careful consideration of the report and recommendation, it is the opinion of this Court that the Report and Recommendation **[Doc. 85]** should be, and is hereby **ORDERED ADOPTED**.  As such, the Defendant's Motion to Suppress Statements **[Doc. 27]** and Motion to Suppress Evidence **[Doc. 28]** are hereby **DENIED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** March 16, 2009.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE